CURRAN v. LAKE CHAMPLAIN & M. R. CO. (Supreme Court, Appellate Division, Third Department. May 3, 1911.) Appeal from Trial Term. Action by James R. Curran against the Lake Champlain & Moriah Railroad Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed, and new trial ordered. Pyrke & Dudley, for appellant. Weeds, Conway & Cotter, for respondent.

PER CURIAM. Judgment and order reversed, and new trial granted; with costs to appellant to abide event, on the ground that there was no negligence shown as against the defendant.

KELLOGG and BETTS, JJ., dissent, the latter in an opinion.

BETTS, J. I dissent. The plaintiff was employed by the defendant as a brakeman, and had been for several years. On the 14th of August, 1908, he was thrown from the rear car, on which he was standing, by the sudden stopping of a train, without any notice by whistle or otherwise from the engineer that the train was to be stopped. The negligence claimed is the failure of the defendant's engineer to give any signal of intention to stop the train. The action was tried as one to recover damages, as a common-law action of negligence supplemented by section 42a of the railroad law (Laws 1890, c. 565), added by Laws 1906, c. 657. At the time in question the plaintiff was upon a car known as a "jimmy car," or ore car, of the defendant. Brakemen had to stand on the running board of jimmy cars. They could not get inside of them. He claimed that before the train left the railroad yard at Port Henry he was told by the conductor to get a link to put in place of a broken one that was on the rear car that he had control of and a new pin at the Y and insert them in the proper place to make connection of the

car from which the accident occurred with another car at the Y upon the defendant's road. The train pulled out of Port Henry with the plaintiff as rear brakeman, and started for Mineville, about seven miles from Port Henry. The railroad track climbs up a mountain by means of various Y's on account of the steepness of the grade. The train upon which the plaintiff was rear brakeman was of such length that it could not all be put upon the Y at once, so a portion of the train, the front part of the train, was detached from the rear cars as they approached the Y, and was taken in on the Y, the single passenger car attached to the train detached and left on the Y, and the remainder of the train that the engine took with it was taken up on the main line, as it is called, of the road, being another raise of the road. Then the engine returned to get the cars that had been left upon the first part or section of the main line, and upon the rear one of which was plaintiff, in charge thereof. These cars were taken up upon the Y, and while waiting to start up on the other part of the main line, as it has been called in the testimony, plaintiff got down off his car and got a whole link or pin from some one near the track at the Y and got back upon the car again. Then the engine started to take these cars up, to connect with the other cars on the main line, where they had been left farther up the hill, intending to leave the passenger car, which was farthest in on the Y, until after the cars, upon one of which (the farthest from the engine) was the plaintiff, were attached to the cars farther up the hill. In some manner in getting in on the Y the passenger car became attached to the locomotive. The conductor was in the passenger car collecting fares. When the engineer started to back up the cars upon which (the farthest one from the engine) was stationed the plaintiff, the engine, of course, brought the passenger car along with it. The conductor hollered to the engineer in substance to stop the train, so that he could disconnect the passenger car. The engineer did so without blowing a whistle or giving any warning to those on the train that he was pushing up the hill that he was going to stop. The testimony was that the train had gone up the hill something like 25 feet when the engine suddenly stopped, the cars ran out the slack some 10 to 20 feet, so that each succeeding one was stopped with a jerk and the last one received the most severe jerk of all. The plaintiff's testimony is that he had taken out the broken link, thrown it away, and put the new link in place, and was with his left foot upon the running board of the forward jimmy car and his right foot down upon the bumpers, hanging hold of the car with his left hand and reaching down with his right hand, with the intention of coupling the car that he was on to the rear car of that portion of the train that was farther up the hill from him; that he was in that exact position when the car stopped with a severe jerk, and he was thrown from the car and received the injuries for which this action was brought.

Rule 20 of the defendant, so far as introduced here, is as follows: "Engine Steam Whistle Signals.—One short blast, stop; apply brakes.

Two short blasts, release brakes." No steam whistle was sounded, it is conceded, at the time of, or just before, this accident. The plaintiff claims it should have been sounded, and, if it had been sounded, he would have had a chance to secure himself upon the car, and would not have been thrown off. The defendant's testimony is in substance that sometimes it is sounded in the Y and sometimes it is not; also that there was no occasion for sounding it at this time, as that required the application of the brakes, and there was no occasion for applying brakes. The court submitted the case to the jury very clearly as to whether the failure to give some kind of warning was negligent on the part of the defendant's engineer, and also as to whether it was contributory negligence on the part of the plaintiff to be in the position that he was in. The jury, answering both, found a verdict for the plaintiff, thus finding that the defendant was negligent in the manner complained of and that the plaintiff was not guilty of contributory negligence. A case quite similar in principle is Jones v. New York Central & Hudson River Railroad Company, 134 App. Div. 40, 117 N. Y. Supp. 1113, where the conductor was standing on the platform of a dumping car, and the engineer, without any signal or direction from the conductor, suddenly stopped the train, throwing the conductor off and injuring him. The jury found in favor of the plaintiff in that action, which was set aside by the trial court and a nonsuit granted, which the Appellate Division reversed. Breed v. Lehigh Valley Railroad Company, 131 App. Div. 492, 115 N. Y. Supp. 1019, was an action tried as a common-law negligence action, and under section 42a of the railroad law, the same as this one. The negligence was claimed to be that of the engineer of the train in starting his train too quickly when the signal to him was to start slowly. The plaintiff himself gave the signal to draw ahead slowly, and the engineer disregarded this signal, and started so suddenly as to throw plaintiff off the end of the car in the rear. The judgment entered upon a verdict in favor of the plaintiff was affirmed by the Appellate Division. In Inglese v. New York, New Haven & Hartford Railroad Company, 133 App. Div. 198, 117 N. Y. Supp. 392, the plaintiff was injured by being hurt in some way by the approach of one of defendant's trains. The negligence relied on was the negligence of the foreman to give warning to the workmen of the defendant, of which plaintiff was one, of the approach of the train by saying, "Look out!" The court dismissed the complaint at the close of the plaintiff's case, which was reversed by the Appellate Division. It was held that the question of the plaintiff's contributory negligence was clearly for the jury. I think that the defendant's negligence and the plaintiff's freedom from contributory negligence were properly submitted to the jury.

Five doctors were examined during the trial upon the question of the extent of the plaintiff's injury. The plaintiff claims, and his doctors substantiate him, that he was injured in such a manner that he had nearly lost control of one of his legs; that the leg would not fol-

low his will in moving his foot; as he moved the other foot, it wobbled and would advance in a sort of a circle; that he could not, on account of his condition, work as a brakeman any more, nor could he work in any business which would require him to climb up a ladder. He was about 23 years old, married, in good health, and was getting $1.77 a day, and had been employed by the defendant for six years at the time of his injury. He had spent $135 for medical and surgical assistance. The defendant's physicians testified that his injuries were not serious, and one or both of them that they thought he was faking in stating his physical condition. The testimony of one other witness was produced, who claimed to have seen him rolling a barrel of beer, and that, if he was in as poor physical condition as claimed, he could not do such work. Just how this witness knew the plaintiff was rolling a barrel of beer, instead of a beer barrel, was not disclosed by her testimony, as she was considerable distance from the plaintiff when she saw this alleged action. The court very fully set forth to the jury the testimony of the doctors, calling particular attention to that of the defendant's physicians, and all of the physicians were allowed to testify at great length as to what they considered his condition, as was also the plaintiff. There were some exceptions to the rulings of the court, but I think none of them presented reversible error. I think that the verdict was not excessive, and that the judgment should be affirmed, with costs.